OPINION OF THE COURT
Richard B. Lowe, III, J.
This case presents the issue of whether the possession of cocaine residue is sufficient to support a charge of criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03).
FACTS
The defendant was arrested on August 2, 1986, and charged with criminal possession of a controlled substance in the *15 seventh degree (Penal Law § 220.03) and unlawful possession of marihuana (Penal Law § 221.05) in an accusatory instrument which reads, in pertinent part, as follows: "Deponent states that defendant knowingly and unlawfully possessed a controlled substance, to wit, marijuana and cocaine in that deponent recovered from defendant’s pants pocket one clear plastic bag containing marijuana, six vials of cocaine in 'crack’ form and one glass 'crack’ pipe containing residue.”
On August 26, 1986, the count charging the defendant with unlawful possession of marihuana was dismissed after the laboratory analysis by the New York City Police Crime Laboratory disclosed that no marihuana was present in any of the material recovered from defendant. However, the laboratory report did disclose that cocaine residue was present in the six glass vials and the glass tube recovered from the defendant.
The defendant has moved pursuant to CPL 170.30 (1) (a) and 170.35 (1) (a) to dismiss the information for facial insufficiency on the ground that possession of cocaine residue alone is not sufficient to sustain a charge of criminal possession of a controlled substance in the seventh degree.
CPL 140.45 provides for the dismissal of an accusatory instrument whenever it is determined that the instrument does not meet the prerequisites of sufficiency set forth in CPL 100.40 and "the court is satisfied that on the basis of the available facts or evidence it would be impossible to draw and file an accusatory instrument which is sufficient on its face”.
The three requirements of sufficiency laid out in CPL 100.40 are:
1) that the information conform to the specifications of CPL 100.15 (CPL 100.40 [1] [a]);
2) that the allegations in the factual part of the information "provide reasonable cause to believe that the defendant committed the offense charged” (CPL 100.40 [1] [b]); and
3) the "[n]on-hearsay allegations of the factual part of the information * * * establish, if true, every element of the offense charged” (CPL 100.40 [1] [c]; emphasis added).
CPL article 100 governs the actual form and content of the information and misdemeanor complaint, and provides in CPL 100.15 (3) that "[t]he factual part of such instrument must contain a statement of the complaint alleging facts of an evidentiary character supporting or tending to support the charges.” That section also reiterates the requirement that "every element of the offense charged and the defendant’s *16 commission thereof must be supported by non-hearsay allegations” (CPL 100.15 [3]).
Penal Law § 220.03 provides that a person is guilty of criminal possession of a controlled substance in the seventh degree when he "knowingly and unlawfully possesses a controlled substance.”
Given the foregoing, the issue emerges whether or not "residue of a controlled substance” constitutes the corpus of the crime, and thus a necessary element of criminal possession of a controlled substance in the seventh degree. Is residue a "quantity of a controlled substance” which the Legislature contemplated is criminal to possess?
"Residue” is defined as "that which remains after a part is taken, separated, removed, or designated.” (Webster’s Deluxe Unabridged Dictionary [2d ed 1979].) Residue, as a term of art used by the New York City Police Crime Laboratory, is that which is not measurable.[1] Cocaine residue, therefore, is that which remains in the vial, pipe or other packaging after the cocaine has been removed or used, and exists in such a small quantity that it cannot be measured.
In the instant matter, a miniscule quantity of a controlled substance, analyzed and characterized as residue, was recovered from the defendant. The cocaine residue, while analytically detectable,[2] was no longer a drug in usable form. The defendant could not use this substance to engage in the types of conduct the drug possession statute was meant to prohibit— i.e., the defendant could not use this substance to induce an *17 artificial state, transfer it for another person’s use, or sell it.[3]
The intentions of the Legislature in structuring the drug laws can be traced through their evolution and revisions in the statutory structure. "To a greater degree than former law, increased punishment for possession or sale of certain quantities of proscribed substances, especially those which were not quantitatively graded before, was correlated to a particular view of the dangerousness of the individual substances or their categories, both in terms of their deleterious effect on the individual abuser and the likelihood of their broad distribution either for profit or as gifts.” (Hechtman, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law art 220, at 7; emphasis supplied.)
Clearly the Legislature was showing its concern for the trafficking of drugs and the effect particular drugs have on those who use them. The Legislature demonstrated further concern for efficient drug law enforcement by enacting changes in 1979 in the drug laws: "The changes effected fall basically into two substantive areas: (1) the adjustment of the weights of the drugs as they determine the classification of the crimes; and (2) the adjustment downward of the minimum sentence range for class A-II convictions and the elimination of the class A-III category. As to the weights, the amounts necessary to constitute class A-I crimes have been doubled; for class A-II possession weight was doubled and sale weight was quadrupled. ” (Id., at 9; emphasis supplied.)
Implied in the Legislature’s change in the statutory structure is a need to evaluate and reevaluate the severity of both the criminal conduct and the punishment for such conduct with an eye toward efficient drug law enforcement. With a similar focus, this court concludes that possession of mere residue of what was a controlled substance does not violate Penal Law § 220.03. The potential abuse in possessing residue does not rise to conduct which the Legislature contemplated as criminal.
For the foregoing reasons, the defendant’s motion to dismiss the information is granted.

. In the course of the court’s own research, it visited the New York City Police Crime Laboratory.
The New York City Police Crime Laboratory defined residue as that which is an unweighable quantity using "normal weighing methods”. The scales used by this laboratory round weights to the nearest one tenth of one grain. This means that amounts greater than .05 grains will register as one tenth of a grain, while amounts of .05 grains or less will not register on the scale, and are, therefore, classified as "residue”.
Note: There are 60 milligrams in one grain. There are 55 grains in one eighth of an ounce. As a point of comparison, the average "crack” vial may contain amounts ranging from one half of one grain to four grains of cocaine. (Conversation with Mary Bianchi, Principal Chemist of NY City Police Crime Lab, July 8, 1987.)

. A substance is considered analytically detectable when it reacts to testing; e.g., changing color or form with the addition of other chemicals. (Conversation with Mary Bianchi, Principal Chemist of NY City Police Crime Lab, July 8,1987.)

. The substance recovered in the form of residue may be used to corroborate allegations of loitering in the first degree (Penal Law § 240.36), of criminally using drug paraphernalia in the second degree (Penal Law § 220.50), or of criminally using drug paraphernalia in the first degree (Penal Law § 220.55).